They were going to consolidate two arguments that they just brought to my attention on the second sheet that Mr. Unruh signed in her opinion, that Jason is doing 17 minutes and Unruh is doing 3 minutes. Do we keep track of their own time? Yes sir, unless you say otherwise. The court will now call cases 5-18-0501 and 5-19-0225. It's my understanding, counsel, that both sides have agreed to consolidate these cases. The oral argument, is that correct? Yes, Your Honor. So, counsel, you may proceed. Justices, counsel, may it please the court. My name is Jason Gorley. I represent St. Joseph's Hospital in this matter. And today I'm asking this court to reverse the opinion of the order of the Circuit Court of St. Clair County, which denied defendants' motion to transfer pursuant to form non-convenience. This case is a medical malpractice case where all the treatment that was placed at issue occurred in Breeze in Clinton County, Illinois. It concerns plaintiffs that reside in Clinton County. And in this case, the majority of the occurrence witnesses reside in Clinton County. So, on the balance of the four non-convenience factors, those factors weigh heavily in favor of transfer. And the trial court erred in a failing to transfer this matter to Clinton County. At the outset, I want to note that as the parties' briefs demonstrate, there's really no issue with regard to the amount of deference to be accorded to plaintiffs' choice of forum. Plaintiffs here, as I mentioned, are residents of Clinton County, not St. Clair County, their chosen forum. The incident at issue, the medical treatment, well, that was rendered in Clinton County, not St. Clair County. So, while the trial court was correct on the face of the order in indicating that the plaintiffs' choice of forum should be accorded less deference, its defendants' position that the trial court erred in according the plaintiffs' choice of forum more deference throughout its analysis of the private and public interest factors. And as I walk through those factors this morning, it will be clear that on balance, those factors strongly favor transfer, particularly when this court correctly evaluates this case through the lens of a less deferential standard accorded to plaintiffs' choice of forum. So, in evaluating private interest factors, the first factor for this court to look at is the convenience of the parties. Now, here, as I mentioned, plaintiffs tried in Trenton. Trenton is located in Clinton County. St. Joseph's Hospital is located in Breeze, Clinton County. As I mentioned, that's where all the medical treatment that was placed at issue was rendered. Dr. Nickel resides in Madison County, which neighbors Clinton County and, as plaintiffs will know, neighbors St. Clair County as well. But Dr. Nickel worked as an emergency department provider in Clinton County, and that's where he rendered the treatment at issue. I'll note that Dr. Nickel also provided an affidavit indicating that Clinton County forum would be a far more convenient place for the trial of this case. For him to attend, St. Clair County would be an inconvenient forum. Dr. Marshall is identified as a defendant in this lawsuit, but at the time that the circuit court took up the hearing on the format of his motion, he was not served with a copy of the complaint, and he has not acted as a party throughout this matter. On information and belief, however, I'll note that it's understood that he resides in northern Illinois, near Chicago, and where he resides, again, on information and belief, is closer to the Clinton County courthouse than the St. Clair County courthouse. The final defendant here is Infinity Meds. Infinity Meds was identified as a defendant only because it's alleged that they are vicariously liable for the alleged acts of omissions of Dr. Nickel and Dr. Marshall. So as far as the convenience factor addresses Infinity Meds, that's really coextensive with an analysis of the factors as applied to Dr. Nickel and Dr. Marshall. So the key here, Justice, is that none of the parties reside in St. Clair County. Counsel, is it the Infinity Meds that has headquarters in St. Clair County? Is that part of the argument? Although I guess there was a dispute about that, whether it was Sangamon County or St. Clair County. Your Honor, I appreciate you bringing up that point. And here it was really Plaintiff's position that Infinity Meds does business in St. Clair County, and therefore they're a resident of St. Clair County. That's Plaintiff's position in this place. In this case, Plaintiff's position is also that as far as St. Joseph's Hospital is concerned, the hospital's registered agent is in St. Clair County. But what Plaintiff is really arguing in that instance is venue criteria. And we're not here to discuss improper venue. If the defendants believed venue was improper, we would have so moved on improper venue. We're not here to talk about that. We're here to talk about forum nonconvenience. And under the forum nonconvenience analysis in Daughty, the Supreme Court held that the Court needs to look beyond the criteria of venue when considering the relative convenience of a forum. So while Plaintiff will suggest to this Court that criteria for venue are appropriate for this Court to consider in forum nonconvenience analysis, they're not. The Supreme Court has directed this Court and the circuit courts to look beyond the criteria of venue when addressing forum nonconvenience. In fact, the appellate court has rejected the very argument that was raised by Plaintiff in this case. In Schuster v. Richards, a 2018 opinion from the First District, the appellate court held that, quote, our courts have made clear that merely conducting business in a county does not necessarily affect the issue of forum nonconvenience, nor does the presence of a corporate defendant's registered agent. That's Plaintiff's argument here with respect to the convenience of the parties. Plaintiff argues that Infinity Meds in St. Clair and St. Joseph's Hospital are residents of St. Clair County for venue purposes, and Plaintiff suggests that this Court does not need to look past criteria for venue when addressing forum nonconvenience. That's not the law in Illinois, and in fact, as this Court properly recognized just last September in the opinion of Shaw v. Haas, this Court, in Shaw, the Plaintiff argued that because the defendant operated stores in St. Clair County, St. Clair County was known for an appropriate forum. Well, this Court rejected that analysis in Shaw v. Haas. This Court recognized that, quote, any business transactions there in St. Clair County are unrelated to the instant case and insignificant for purposes of forum nonconvenience. Well, the same is true here. The fact that St. Joseph's Hospital has a registered agent in St. Clair County has nothing at all to do with emergency department treatment rendered in Breeze in Clinton County, Illinois. The same is true for Infinity Meds. The fact that Infinity Meds may do business in St. Clair County has nothing at all to do with emergency department treatment rendered in Breeze in Clinton County. So Plaintiff's argument has been soundly rejected by this Court just last September. And in properly evaluating this factor, it's clear that the convenience of the parties favors, strongly favors, transfer to Clinton County. The second factor for this Court to consider in the private interest factor analysis is the ease of access to sources of testimonial, documentary, and real evidence. And similarly, this factor weighs in favor of transfer. St. Joseph's Hospital has produced an affidavit demonstrating that the majority of members of its staff that were involved in Plaintiff's treatment reside and are available in Clinton County. Similarly, in this case, it's significant that the prior treatment leading up to the emergency transfer to St. Joseph's Hospital all occur in Clinton County. Here, the Plaintiff presented earlier in the day to his primary care physician at his office in Trenton, Clinton County, Illinois. And that's Dr. Garcia, who practices out of Trenton. And at Dr. Garcia's office, it was determined that Plaintiff suffered from arm weakness and left facial droop. And it was these complaints that led to the emergency transfer from Trenton, Clinton County, Illinois, to Breeze, Clinton County, Illinois. And the transfer was effectuated by EMS personnel affiliated with Sugar Creek Ambulance, an ambulance service that serves that small area of Clinton County, Illinois. They're all made up of volunteer members, as the record demonstrates. So not only are individuals associated with the treatment at St. Joseph's Hospital, they reside and are available in Clinton County, but also individuals involved in the treatment leading up to that emergency treatment at St. Joseph's Hospital, they all reside in and are available in Clinton County. So here, the clear majority of the occurrence witnesses, in addition, it's important to note, to the relevant medical records, both at St. Joseph's Hospital, at Dr. Garcia's office, with the EMS provider, those are all available in Clinton County, not St. Clair County. In fact, none of the occurrence witnesses reside in or are available in St. Clair County. Now, in response to this argument, plaintiffs point to treating medical providers, and plaintiffs also point to damage witnesses that they assert are located in St. Clair County. Illinois courts, however, recognize that post-occurrence treating physicians are typically presented at trial via evidence deposition. They're typically not presented as live witnesses. In fact, the Supreme Court rules express a preference for physicians to present at trial via evidence deposition as opposed to as a live witness. Therefore, as we've noted in our briefs, there are a number of appellate court opinions that indicate that less significance is to be afforded to the location of post-incident treating health providers. With respect to damages witnesses, similarly, courts in the state of Illinois hold that damages witnesses hold less weight in this analysis. A case that's directly on point is the case of Bruce v. Addadero. That's a 2010 opinion from the 1st District. This was also a medical malpractice case, and there a court held that the trial court abused its discretion in denying the defendant's motion to transfer pursuant to foreign non-convenience based in part on the fact that the trial court placed an unreasonable amount of reliance on the location of damage witnesses and effectually elevated damages witnesses to the same category as occurrence witnesses. Now, here we have the significant number of occurrence witnesses located in Clinton County. The fact that plaintiff points to some damages witnesses that are certainly located in St. Clair County simply cannot outweigh the connection with Clinton County in this case. So that factor also weighs heavily in favor of transfer. I'll just briefly address the third and fourth factors under this analysis that concern the availability of compulsory process and the costs of obtaining willing witnesses. As I've noted earlier, the clear majority of occurrence witnesses are located in Clinton County, not St. Clair County. It will be much more cost effective to have them produced at trial in a Clinton County forum as opposed to a St. Clair County forum. And again, treating physicians will be likely presented via evidence deposition as opposed to live at trial. The fifth factor addresses the jury view of the premises. And as the Supreme Court has instructed, what this factor addresses is the possibility, not the necessity of a view of the premises. Here, the treatment was rendered in Breeze, Clinton County, Illinois. That would be more easily addressed in a Clinton County as opposed to a St. Clair County forum. So all of those factors also weigh in favor of transfer. The sixth factor addresses all other practical considerations that make a trial easy, expeditious, and appropriate. And again, here, all the medical treatment at issue was rendered in Clinton County. In Bruce v. Addadero, the case I mentioned earlier, the appellate court held that the location of hospital personnel where the treatment was rendered should be considered under this factor. Well, here, too, all the treatment was rendered in a St. Joseph's Hospital. Therefore, the sixth factor transfer is also favored. So on balance, all the private interest factors strongly weigh in favor of transfer of this case from St. Clair County to Clinton County. Now, before I jump into the public interest factor analysis, I want to take a moment to address the opinion of Langenhorst v. Norfolk Southern Railway. That's a case that plaintiffs here placed extensive, almost exclusive, reliance upon. In fact, if you've noted in reading plaintiff's brief in this case, plaintiffs cite Langenhorst in their argument on every page except for, I believe, one. This case, however, is readily distinguishable from the case before this court for a number of reasons, and Langenhorst's opinion really has no application here. The Langenhorst case involved a train vehicle accident that occurred in Clinton County near the St. Clair County border, and it occurred on a railroad line that bisected all of St. Clair County and most of Southern Illinois. So Langenhorst's case did not involve circumstances that are really particularly localized to the forum at issue. In fact, in Langenhorst, the Supreme Court noted that what was at issue there was a rural railroad crossing, and that type of rural railroad crossing was present all throughout St. Clair County, just as it was in Clinton County. So that case needs to be contrasted with the case that's presented here, a medical malpractice case. And medical malpractice cases under Illinois law are routinely recognized to have a particularly localized connection to the forum, that the forum at issue where the doctors or nurses or members of medical staff are rendering treatment to a patient has a localized connection to the forum. Langenhorst didn't have that type of localized connection. And moreover, at Langenhorst, the court noted that the only eyewitness to the accident resided in Indiana, and the majority of the relevant trial witnesses did not reside in Clinton County. So in Langenhorst, as contrasted with this case, the Supreme Court there was looking for witnesses in Clinton County, the county to which transfer was sought, and the court said, well, there really aren't any occurrence witnesses here. Well, that's not the case here. As we've demonstrated, most of the occurrence witnesses all reside and are available in Clinton County. That was not the case in Langenhorst, but Langenhorst is readily distinguishable and not, and of no real significance to the case before this court today. I'll move along now to addressing the public interest factors. And under these factors, the first factor is addressing court congestion. And I'll address this factor briefly. As we noted in our briefs to the court, cases take approximately six months longer to reach verdict in St. Clair County than they do in Clinton County, so that factor does weigh in favor of transfer. The second factor concerns removing an unfair burden and expense imposed on residents with no connection to the litigation. While the Supreme Court has repeatedly recognized that jury duty is a burden on citizens of the court where the trial is going to be held, and further, it's a burden on the county that has to facilitate the trial. So there has to be some connection, some significant connection between the case at issue and the forum in which the case will ultimately be tried. In medical malpractice cases and in white courts, there's a strong connection to the forum where the treatment was rendered, and that that connection wants the imposition of jury duty on citizens of that forum. We cited Gundlach v. Lynn to reinforce that proposition. In that case, the appellate court held, again, in the medical malpractice case, that it would be fair to impose jury duty on residents of McHenry County where the treatment was rendered, but that it would be unfair to impose jury duty on residents of Cook County where none of the medical treatment at issue was rendered. Well, the same is true here. All the medical treatment that's been placed at issue, that was rendered in Clinton County. It would be fair and expected to impose jury duty on residents of Clinton County. It would not be fair. It would not be expected to impose jury duty on residents of St. Clair County where none of the medical treatment was rendered. The final public interest factor and of critical importance here is the interest in having local controversies decided locally. Illinois courts recognize a strong interest in having cases with a local connection decided locally. This case presents a controversy which is local to Clinton County, and it should be decided in Clinton County. Illinois courts that have addressed medical malpractice cases routinely recognize the strong connection with the forum in which the treatment was rendered. In Bruce v. Addero, the appellate court held at the forum where the treatment was rendered, quote, clearly has a public interest in the medical care provided at its medical facilities by physicians to its residents. Close quote. In Gundlach v. Lynn, another medical malpractice case, the appellate court held at the forum where the treatment at issue was rendered presents a, quote, local controversy that would be of interest to the citizens of McHenry County who rely on defendants for their medical treatment, while the citizens of Cook County have no interest in this litigation. Close quote. Well, here, similarly, all of the medical treatment placed at issue was rendered in Clinton County. Plaintiffs here are Clinton County residents. The citizens of Clinton County who rely on these defendants for their medical treatment, like plaintiffs, have a very strong interest in deciding this controversy. This factor weighs heavily in favor of transfer to Clinton County. Now, plaintiffs' response to this factor will sound familiar. Plaintiffs, again, argue, well, St. Joseph's Hospital's registered agent is located in Clinton County, sorry, St. Clair County, and plaintiffs further argue that Infinity Meds does business in St. Clair County, and therefore they're a resident of St. Clair County, and St. Clair County residents have an interest in deciding this controversy. Well, Your Honors, this is, once again, a venue argument. Plaintiffs have, once again, asked this Court to collapse the form-not-convenience argument down into a venue argument. This Court rejected that analysis in the Shaw v. Cox opinion. The Supreme Court rejected that analysis in the Dawdy opinion, and I'm asking that this Court reject plaintiff's suggestion to the contrary here and not permit the plaintiff to prevail on this Court to let venue characteristics, to let venue arguments control this form-not-convenience argument and analysis. So here, the trial court erred in denying defendants' motion to transfer because, on balance, the public interest factors and the private interest factors strongly weigh in favor of transfer to Clinton County, and particularly in light of the less deferential standards to be accorded to plaintiffs' choice of forum. So I'm asking that, since the Court abuses discretion in its analysis, that this Court reverse the trial court and let this matter be transferred to the Circuit Court of Clinton County, and I'll yield the remainder of my time to Mr. Unrath. Would you state your name again for the record, Counsel? Jason Worley. Thank you. Good morning. My name is Craig Unrath. I represent Dr. Nichols. I just have a few brief comments. In the appellee's brief, you pointed out that in Langenhorst, the Court stated that when you are dealing with a form-not-convenience analysis between adjacent counties, the courts are arguing over minutia. Well, I would argue that in many cases, not necessarily this one, but in many form-not-convenience cases, even in non-adjacent counties, adjacent or otherwise, we argue about minutia. And I think sometimes it's important to reflect on what is the purpose. Thank you very much for your time. Could you finish your point? Please don't insult me in these two cases, so I'm going to relax. I think it's important to point out that the purpose of the form-not-convenience doctrine was stated in Woreen, where the Court stated that it is an equitable doctrine founded upon consideration of fundamental fairness and judicial administration. The Court went further and stated that a common concern animating our form-not-convenience jurisprudence is curtailing form-shopping by the plaintiffs. Now, we all know that when the plaintiff is foreign to the chosen form and the situs of the accident or the cause of action arose in a different form, that form-shopping may be presumed. Now, the Daugherty Court concluded that decent judicial administration cannot tolerate form-shopping as a persuasive or even legitimate reason for burdening communities with litigation, litigious controversies which should in all justice be tried in the other county. That's what we're dealing with here. We're asking that jurors in St. Clair County leave their offices, leave their work, leave their families, and put their time into serving and deciding a case that has no substantial relationship to their residents. That's all I have, and I ask the Court to reverse. Thank you very much. Thank you, counsel. Mr. Newton. Thank you, Your Honor. Can you support me on counsel? Just to pick up where counsel left off on the issue of form-shopping, and I thought it was curious that you cited Daugherty, because Daugherty specifically said the trial court, quote, may not consider the practice of form-shopping in a form of nonconvenience analysis. The interesting thing about that case, Daugherty, is that now that I've achieved senior status within the bar where I did not attend the ceremony, I've taken the position that I'm 39 years old and nobody can change that, so at 40 years you're supposed to attend and become a senior counselor, so I guess in theory that makes me a senior counselor. I'm old enough to recall the three cases that actually gave rise to the doctrine of form nonconvenience, and those cases were what I'd refer to as a trifecta, and they occurred in the early 2000s, and the first of those cases was, of course, a case called Green, and it was a case called Green v. Sumbank, and the court in Green seemed to be saying, because the court had struggled, as Your Honors all know, with the doctrine of form nonconvenience. For a doctrine that was originally conceived to create convenience and be equitable and to stop litigation, this is that there's no area that has generated more jurisprudence in the last 15 years than form nonconvenience cases. They comprise 16% of this court's docket, I believe, if I'm not mistaken, and the point is that what they started to say in Green is they said, well, we've kind of started something here because we started with Torres and then we extended it to interstate, and they acknowledged that it was getting awfully unwieldy, and so then they decided to go Green, and in Green they make the following statement, in an effort to clarify the doctrine, we hold that a trial court abuses its discretion in granting an interstate, strike that, let me start again, abuses its discretion, granting interstate form nonconvenience motions of transfer venue, whereas here the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation. So now at this point the plaintiff's court, I was a younger man then, says, wow, now we're going to start to get some relief from this form nonconvenience. After that, along comes Dottie, Dottie, the case which has been cited. Now, remember, this began with Green, and Green says is that when the cases are scattered, when the cases are scattered hither and yon, and no one county's connections predominate, then at that point we're going to start looking at other things. That's what began with Green. But then the Supreme Court comes out with Dottie, which was a source of great happiness to the defense court. And they said in Green we concluded that the balance of the form nonconvenience factors did not strongly favor plaintiff from the plaintiff's chosen forum. And they said we held that where the potential trial witnesses are scattered among several counties, including plaintiff's chosen forum, and no single county enjoys a predominant connection in the litigation, the plaintiff may not be deprived of his or her chosen forum. However, they said in this case, meaning Dottie, none of the witnesses reside in Madison County. They said there was no connection to Madison County. They didn't say medical witnesses. They didn't say post-occurrence witnesses. They said no witnesses. So then along comes Langenhorst. Langenhorst, for better or for worse, is my case. And in Langenhorst, I'm well aware of facts in Langenhorst. Rita Langenhorst was a lovely lady. She lived with her husband at a railroad crossing in Clinton County. And the train killed her husband. Rita's still alive today, actually. And what happened was is that we filed the case in St. Clair County as opposed to Clinton County. And what happened thereafter was is that the Fifth District at that time denied the 306A petition. After that, the Supreme Court entered a supervisory order and said, no, we want you to consider this. But here's what was instructed. They said, we want you to go back and consider this in light of the two Supreme Court decisions recently construing the doctrine. You know what those two cases were? Green and Dottie. That's where Langenhorst came from. Langenhorst grew out of the Supreme Court's instruction to the Fifth District to consider those two cases and reconcile them. And the only way I could see to reconcile them was the fact that in Green, and there were several witnesses standing throughout, very frequently. In Dottie, there were no witnesses in the chosen four. No witnesses. And in this case, Langenhorst, I had one. His name was Mark Heffernan. He was a retired police officer from the Belleville Police Department, and he was my investigator, and he investigated that accident. And what happened in that case is that then we went to the Supreme Court, and in a four-to-three decision, the Supreme Court said, no. Venue is proper in St. Clair County. And I'm here to tell you the reasons why they said it. They said ultimately, and this is why I was listening with interest to Mr. Gordon's advancement lawyer. I wish I was his age. Listening with interest to his argument because he was talking about minutia as was other counsel. And this is exactly what Langenhorst said. Having reconsidered the appellate court, the Supreme Court noted, quote, when adjoining counties are involved, a battle over the forum results in a battle over minutia. Now, take the expression battle over minutia and reconcile that with the notion of convenience and reconcile that with the notion of fairness and explain to me how and why we're sitting here in this court 17 or 18 months after the original order was passed. Because this is what Mr. Gordon's argument is. It's about minutia, isn't it? He's here to say all of our occurrence witnesses are in Clinton County. And we're going to say that one could be a bigger battle than minutia when we start to get into arguments where we say an occurrence witness is entitled to more weight than a post-occurrence witness. I mean, in a medical malpractice case, you're telling me I'm not going to be interested in presenting my treating doctors as testifiers in this case? Are you telling me that I have to take the position that when I have a man who's been crippled by a stroke and it's time for me to go to trial that I'm just going to take evidence depositions of his treating doctors? Particularly whereas here the subsequent treating doctors all worked for the same HSHS Enterprise. They went from St. Joe's and they transferred him to St. Elizabeth's in Belgium, the mothership. Of course I want to bring those people. But what are my chances of getting HSHS doctors to come live to Clinton County? Zero to none. Particularly when here HSHS St. Joseph is what? The defendant. It's not going to happen. So to suggest or pooh-pooh this notion that subsequent treating doctors in a medical malpractice case can be presented by deposition, I understand they want to dictate where I bring my lawsuits. They shouldn't be allowed to dictate how I present my proof. And who's to say that a subsequent treating doctor is only going to give evidence on the subsequent treatment and the injuries? A medical malpractice case involves issues of standard of care, it involves issues of medical causation, and it involves issues of damages. Every witness that I've disposed of in St. Clair County is a potential damage witness but he or she is also a potential liability witness. There is nothing that prevents me from asking those doctors whether or not given the facts of this case there's been a deviation from the standard of care. I can turn those witnesses into liability experts, I can turn them into causation experts, particularly causation experts. And so to suggest that somehow or another these people have been relegated to some kind of a minimal role, it's selfish. And it flies right in the face of landlords. I'm here to suggest this to counsel who takes a little bit of umbrage with the fact that we rely heavily on landlords. Yeah, we do, it's the law of the state of Illinois. The Supreme Court has never, ever, ever overruled the following propositions. The Supreme Court says they, they only win if they have shown no reasonable person would take the view taken by the true trial judges in this case. No reasonable person could take a view that in an adjoining county where you have an HSHS, which has its registered agent here, guess what the connection was in St. Clair County in Norfolk and Southern? Norfolk and Southern had its registered agent here. That was exactly what the Supreme Court thought was significant when they said that St. Clair County has an interest in this case because your registered agent is in St. Clair County. There's no place in the world that they said St. Clair County only has an interest because we've got rural, we've got crossings in St. Clair County like we do in Clinton County. The touchstone of that notion was that's where your registered agent is. So St. Clair County has an interest in its registered agent. Furthermore, is that, so are we going to say no reasonable person could conclude that in a situation where we have 10, 10 medical providers, none of them selected by the plaintiff. This isn't a question of plaintiff selecting medical agents. These guys were all sent to these doctors. And as a result of the 22 occurrence witnesses, this family is essentially from St. Clair County. All their friends are from St. Clair County. They just happen to live in Clinton County. I'm not suggesting that makes them residents. I am suggesting that the occurrence witnesses, the post-occurrence witnesses, the damage witnesses, they're legitimate witnesses who are their friends, their neighbors, and their relatives who could testify to the effect this has had on them. We're talking about 30, 35 witnesses, but I'm not going to count because that is going down the road that they want to go down, which is a battle of minutia. The Supreme Court says they win only if the inconvenience factors right way outweigh plaintiff's substantial right to try the case in the chosen form. We may not live here, but we still have a substantial right to pick our form. And form shopping? I argue by the courts. I'm not making myself a witness. It's a matter of the transcript. The Supreme Court said to me, said, aren't you form shopping? I said, of course I'm form shopping. It'd be malpractice not to form shop. You don't think they're form shopping? You don't think they think they're going to get a better verdict in Highland? Or in fact, in Clinton County, where the case is going to be against their only hospital, and the juries are going to think to themselves, well, would we return a verdict for this man? We may be hurting our own hospital. Little are they going to know. It's just part of the HSHS system where the registered agent is just located 20 miles off the road in St. Clair County. And that's what the Supreme Court said in Donahue. That's not a factor. I'll be honest with you. Of course I want the case in St. Clair County. I'm going to do as well as I can for my client, just like Mr. Gorley wants to do as well as he can for his client. They only win if the balance of factors tips strongly in favor of transcript. Strongly. Strongly. How does it tip strongly in favor? When you stop and you consider the facts of this case, the facts of Langenhorst, the number of witnesses, the fact that there are adjoining counties, and the fact that no one county has enough witnesses that it predominates. Those are the principles of Langenhorst. They only get to win if they show the circumstances in this case are so exceptional as to deprive Ponus of his choice of bidding. So exceptional. This is getting so exceptional. And here are the two points that I think are so important and which I respectfully submit on the law are just positive of really what the issues are in this case. Langenhorst said that when the witnesses are dispersed among several counties and will be required to travel regardless of venue, the private convenience factors don't favor transfer. That's a specific holding from the court. These are adjoining counties. Gareen says, because this was the part where the court says, let's take, somebody come here and let's try to see if we can get Dottie on the same page with Gareen. And Gareen says when potential witnesses are scattered around adjoining counties, the trial court actually abuses discretion when it grants transfer. No place does the court say medical witnesses, damage witnesses versus occurrence witnesses. No place has the Supreme Court ever said that. Appellate court has said that. The Supreme Court has never proved that. In fact, what the Supreme Court has said is that we're trial witnesses, we're trial witnesses are. This notion of creating this difference between occurrence witnesses who have been exalted, this exalted status, the Supreme Court never did that. If the Supreme Court did that in Landing Horse, I'm here to tell you there was only one witness in St. Clair County. He was my investigator. I mean, I selected the investigator. He worked for me. I didn't select him for purposes of that case. But he was my investigator. That was the only witness. What was also the same in Landing Horse as here is that in Norfolk and Southern, their registered agent was in St. Clair County. The court thought that was significant. Same thing here. HSHS. Registered agent is in St. Clair County. In addition to that, and since then as we go further, is that the number of actual witnesses in St. Clair County were much greater. So as a result of those facts, remember, all I had in St. Clair County was that. And the accident actually happened here. And the Supreme Court said, no, this is enough. We've got to stop this. This is getting out of control. And then that's the last word they're going to give us on it. And unfortunately, it seems like it goes on. Oh, and something else that's really important here. And I admire Mr. Garlick for making the argument. I think it's a good argument, but I think it fails. He tries to distinguish and say that Landing Horse, the people of St. Clair County, had an interest in seeing to it that they had safe crossings in St. Clair County, even though the accident happened in Clinton County. But he seems to think that the people in St. Clair County don't have an interest in seeing to it that medical care that is being provided by HSHS, when registered agent is, the mothership for that hospital, or the emergency room, the very people who provide that medical care in St. Clair County, that they don't have an interest in seeing to it that that kind of medical care is provided in St. Clair County. How can you distinguish a railroad crossing from medical care? When does medical care become so localized when, in fact, the two defendants are rendering it, indeed, from the mothership, 20 miles away from the place that you're now saying is inconvenient? With respect, it doesn't make any sense. And so far as this case is concerned, is that when we look at the facts of Landing Horse, and they say we rely on Landing Horses, I thought it was curious because I was chastised for relying on Landing Horses for law of the state of Illinois. It's never been changed. And so just because, you know, this is in the other case that I want to talk about, there's also just Mr. Gore's own argument. He says that prior treaty doctors count, but subsequent treaters don't. Where do these rules come from? He says, well, in Lang County, we have prior treaty doctors, in addition to the doctors who actually manage, or in my delegation, mismanage this man's stroke. I'm here to suggest to you is that in a liability case or a malpractice case, when suddenly does the purpose of proving damages, when does that become less important than proving liability? I mean, I've always tried to teach my clients and teach, during my rather aborted trip as an academic, teach people that in a malpractice case, you have to prove breach, causation, and damages. You don't suddenly take a witness and stick this witness, him or her, into a box and say you're in a less important box than the other box. When, in fact, what the courts have said, when the witnesses, trial witnesses, are scattered about in different counties, it's just that you must, you must, under those circumstances, if you follow Doreen's say, take what the court has chosen for them. If they are adjoining counties, it's an abuse of discretion to transfer. And then we come along with doubting. The only thing that made doubting, and I think, when I got that order back from the Supreme Court and they said, okay, reconcile. And then the Fifth District did it, but they didn't do it to the Supreme Court's satisfaction. The only way I could reconcile was the fact that when you look at it, it said specifically, in this case, however, none of the witnesses reside in Madison County. In Doreen, they resided. Both were adjoining counties. The only thing, so when I go to the Supreme Court, I say, hey, I've got a witness here. When you read Glenhorse, you see where the court made reference to the fact that we had a witness. See where the court made reference to the fact that the registered agent was in St. Clair County, the same way it was here. See where the court made reference to the fact that St. Clair County has an interest because of the fact that one person had a registered agent. They're residents there, literally a resident there, and that the interest that they would have would be no less, as it relates to a railroad crossing, than it would be to regulating medical care. In fact, I would submit more. And so when you take all of those factors together, and so then ultimately what do we end up with? We end up with the complete opposite of Mr. Gorley, is that we end up in council, is that when they make up, it says when adjoining counties are involved, the battle over the form results in a battle over minutia. And with complete respect to Mr. Gorley, what did he argue? Minutia. He argued court congestion. Langenhorst specifically rejected court congestion as any meaningful factor in making a determination about form non-convenience. They said, well, he makes it about location of documents. This court, in Woodward v. Bridgestone, specifically said the location of documents is a non-event. Documents now are transferred by drop boxes. They're transferred electronically. Nobody has any paper anymore. My goodness, if you have paper, the kids are going to look at you like you're trying to destroy the environment. It isn't where the documents are. The documents are in a computer, and they're transferred, and they're instantly transferred. So all of these, so as the view of the scene, where we're going to go look at the emergency room, a view of the scene made ten times more sense in Langenhorst than it would ever make in this case. So all of these factors that were talked about all of these years, they don't hold weight so often anymore. Because why? Because it's minutia. And that's what the Supreme Court said when they finally got a chance to take Dowdy, and they got a chance to take Green, and they got a chance to reconcile them. If you've got witnesses, and it's time to say goodnight. Mr. Keefe, I gave you a few more minutes. If you need a few more minutes to wrap up. Judge, I appreciate that, and I will. But I would like to say this. As it would relate to the issues of battle over minutia, I would also like to point one thing out. And I know that this case is before the court. But I'd like to talk about one other thing, and that's just the practicality. Your honors have all been exploited for a long time. You all have. You've tried cases. And, you know, for better or for worse, that's how I made my living. And I'm here to tell you, the doctrine of foreboding convenience also largely revolves around, in effect, this belief that all cases go to trial. They don't. Two percent go to trial. Less than two percent of cases filed go to burden. And so we have spent all of this time and all of this effort and all of this jurisprudence largely over things about who's going to be inconvenienced by a trial. I submit to you that the touchstone of the doctrine has always been convenience. Is it really inconvenient to require some doctors from Clinton County to come to St. Clair County? Is it any less inconvenient to require doctors from St. Clair County to come to Clinton County? Is it any less inconvenient to require 20 or 25 occurrence witnesses who could talk about what this family's relationship, the Coonan family is an old name in Clinton County, what that relationship is going to have on their life? I mean, I just think that when you say that it has to substantially outweigh, that no reasonable judge could have concluded otherwise, tested by this standard, I think that in this case the judge has got it right. And I appreciate your honor that extra time. You're welcome. Thank you. Thank you, counsel. Mr. Butler. Thank you, your honors. Plaintiff's counsel has suggested that I walk in front of you and spend my time talking about minutiae. Frankly, I wouldn't waste your time with minutiae. The minutiae the plaintiff's counsel talks about are the factors that the L.A. Supreme Court has directed us to examine in determining whether transfer pursuant to forum nonconvenience is appropriate. In looking at where the witnesses are located, where documents are located, the public interest in a particular forum, those aren't minutiae, as plaintiff's counsel suggests. These are factors that this court and the circuit court is required to examine in looking at the principles of forum nonconvenience and in that analysis. Now, plaintiff's counsel did, as anticipated, hang his hat on the Langhorst opinion. I understand why plaintiff has chosen to do that in this case, but as I mentioned earlier, this case is not Langhorst. Plaintiff's counsel repeatedly advised this court that the Langhorst opinion recognized only one witness in St. Clair County, but that the court still decided that St. Clair County was an appropriate forum under the forum nonconvenience analysis. But what plaintiff's counsel didn't address is the fact that in Langhorst, the court also recognized that no occurrence witnesses were located in Clinton County, the county to which transfer was sought. That's a fundamental difference with this case. We've identified a number, an extensive number, of occurrence witnesses that are located in Clinton County. So while plaintiff points to Langhorst in the analysis there, for instance, the one witness in St. Clair County, the registered agent in St. Clair County, those may have been significant in the Supreme Court's holding in Langhorst because there, the court examined the connections with Clinton County and recognized there were really fundamentally no witnesses of significance in the county to which transfer is sought. Langhorst is fundamentally different than this case. Plaintiff's counsel also respectfully did a very nice job of walking through some of the Supreme Court history on forum nonconvenience and what plaintiff's counsel suggested to this court is that when we're talking about a battle over adjoining counties and forum there, we're talking about a battle over Minutia. And again, the word Minutia came up again and again and again in reference to adjoining counties. But in discussing the Supreme Court history on this issue, plaintiff's counsel did not mention the opinion of Washington versus Illinois Power Company where the Illinois Supreme Court held that transfer from Madison County to Bond County was required under the principles of forum nonconvenience. Plaintiff didn't address in detail the opinion of Daugherty where again the Supreme Court held that transfer from Madison County to adjoining McCoubin County was required. We have two Supreme Court cases where the Illinois Supreme Court examined factors and decided we may have adjoining counties but in examining the forum nonconvenience principles, transfer is still required. That's the case here. That's what this court recognized in Shaw versus Haas last September when this court concluded that the transfer under forum nonconvenience was required from St. Clair County to adjoining Monroe County. We may be dealing with adjoining counties here but there are fundamental, very strong reasons to transfer this case from St. Clair County to Clinton County. I want to briefly address one more representation made by plaintiff's counsel and that's a suggestion that it was significant that the plaintiff here was transferred to St. Elizabeth's Hospital in St. Clair County. St. Elizabeth's Hospital is not St. Joseph's Hospital. Plaintiff's counsel suggested that because there's an affiliation with Hospital Sisters Health System, HSHS, that that is somehow significant. The appellate court rejected that argument in Bruce versus Adderall. The court there held that while the county to which transfer was sought may have hospitals and facilities operating under the same affiliation, that wasn't significant under the principles of forum nonconvenience. Because he says it's the mothership. St. Elizabeth's Hospital, Your Honor, is not the mothership of Hospital Sisters Health System. There's nothing in the record to suggest that Hospital Sisters Health System is based out of St. Clair County. To the contrary, affidavits in the record and the record would reflect that Hospital Sisters Health System is officed out of Sangamon County in Springfield, Illinois. St. Elizabeth's Hospital is not the mothership of Hospital Sisters Health System. And the suggestion that the location of HSHS has anything to do with this forum nonconvenience is simply not appropriate for this analysis and should not enter this court's analysis with regard to the appropriate factors. So, on balance, in looking at the numerous extensive connections in this case, may I conclude? May I conclude, Your Honor? Yes. Okay, thank you. In examining the private and the public interest factors, and particularly in light of the less deferential standard accorded to plaintiffs' choice of forum, we respectfully ask that this court reverse the opinion of the trial court and direct that this matter be transferred to Clinton County. Thank you. Thank you, counsel. This court will take these cases under advisement and issue this decision in due course.